# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

NO. 17-1880(L)
(3:12-cv-00007-JFA)

_____

RICHARD STOGSDILL; NANCY STOGSDILL, Parent of Richard Stogsdill, on behalf of themselves and other similarly situated persons; ROBERT LEVIN; MARY SELF, Parent of Robert Levin, on behalf of themselves and other similarly situated persons,

      Plaintiffs – Appellants,

      v.

ALEX M. AZAR, II, Secretary of Health and Human Services; ANTHONY KECK; SOUTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; CMS, JOHN DOES 1-20; TIMOTHY HILL, Acting Director for the Center for Medicaid and CHIP Services,

      Defendants - Appellees,

_____

NO. 17-1916
(3:12-cv-00007-JFA)

_____

RICHARD STOGSDILL; NANCY STOGSDILL, Parent of Richard Stogsdill, on behalf of themselves and other similarly situated persons; ROBERT LEVIN; MARY SELF, Parent of Robert Levin, on behalf of themselves and other similarly situated persons,

       Plaintiffs – Appellees,

       v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES,

       Defendants - Appellant,

And

ALEX M. AZAR, II, Secretary of Health and Human Services; CMS, JOHN DOES 1-20; TIMOTHY HILL, Acting Director for the Center for Medicaid and CHIP Services,

       Defendants

_____

### APPELLEES'/APPELLANT'S FINAL OPENING AND RESPONSE BRIEF
_____

Damon C. Wlodarczyk, Fed I.D. 9487
Post Office Box 11412
Columbia, South Carolina 29211
Telephone: 803-799-9993

# TABLE OF CONTENTS

Table of Authorities ……………………………….…………………………………iii

Jurisdictional Statement………………………………………………………….….1

Statement of the Issues on Appeal ……………….….……………………….……1

Statement of the Case …………………………….………..………………....……2

Summary of the Arguments………..……………………..……………..…...10

Arguments

I.    THE DISTRICT COURT ERRED IN FINDING SCDHHS VIOLATED THE FEASIBLE ALTERNATIVES PROVISION OF THE MEDICAID ACT ……………………………………………………....................................11

II.   THE DISTRICT COURT ERRED IN DENYING SCDHHS'S MOTION MOTION JUDGMENT ON THE PLEADINGS…………………………..17

III.  THE DISTRICT COURT DID NOT ERR IN DISMISSING STOGSDILL'S CLAIMS…………………………………………………………………...20

IV.   THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S ADA AND REHABILITATION CLAIMS……..39

V.    THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S 42 U.S.C. § 1983 CLAIMS………………………45

Conclusion ……………………………………………..………………………...48

# TABLE OF AUTHORITIES

## Cases

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011)………18, 19, 40

*Ackerman v. ExxonMobil Corp.*, 734 F.3d 237 (4th Cir. 2013)…….……………..28

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000)…….....28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………18

*Beal v. Doe,* 432 U.S. 438 (1977)……………………………………………………38

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………18

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)……………………..21, 22

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996)…………….……23

*Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011)…………..20

*Chase Brexton Health Servs., v. Maryland*, 411 F.3d 457 (4th Cir. 2005)……20, 28

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)…………20

*Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007)………………………….………15, 16, 21

*Doe v. Kidd*, 419 Fed. Appx. 411 (4th Cir. 2011)……………………………15, 21

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)……33, 34, 36

*Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281 (4th Cir. 1979)………………..41

*Great American Ins. Co., v. Gross*, 468 F.3d 199 (4th Cir. 2006)…….24, 25, 28, 31

*Illinois League of Advocates for Developmentally, Disabled v. Illinois Dep't of Human Servs.*, 60 F. Supp. 3d 856 (N.D. Ill. 2014)………………………………15

*Illinois League of Advocates for the Developmentally Disabled v. Illinois Dep't of Human Servs.*, 803 F.3d 872 (7th Cir. 2015)……………………………. ……15, 17

*Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710 (4th Cir. 1999)………..36

*Johnson v. Collins Entertainment Co.*, 204 F.3d 573 (4th Cir. 2000)…………….38

*Jones v. Miles*, 656 F.2d 103 (5th Cir. 1981)……………………………....39, 40

*Jones Eng'g Sales, Inc. v. Faulkner/Baker & Associates, Inc.*, 199 F.3d 1327 (4th Cir. 1999)……………………………………………………………….…39

*Long v. Cason*, 25 S.C. Eq. (4 Rich. Eq.) 60 (1851)……………………………..42

*McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63 (1st Cir. 2003)………………20

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America*, 946 F.2d 1072 (4th Cir. 1991)……………………………………………………25

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)…37

*North American Precast, Inc. v. General Cas. Co. of Wis.*, 413 Fed.Appx. 574 (4th Cir. 2011)………………………………………………………...…22, 46

*Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999)…………………….………26

*Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431 (4th Cir. 2005)…………...11, 45

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)…………………………………6

*Sherrod v. Harkleroad*, 674 F.App'x 265 (4th Cir. 2017)……………………...17, 18

*Solter v. Health Partners of Philadelphia, Inc.*, 215 F.Supp. 533 (E.D. Pa. 2002)..38

*Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed.Appx. 182 (4th Cir. 2001)…….............25

*Stogsdill v. S.C. Dep't of Health and Human Servs.*, 410 S.C. 273, 763 S.E.2d 638 (Ct. App. 2014)…………………………………………………………… 26, 30

*Stogsdill v. S.C. Dep't of Health & Human Servs.*, 415 S.C. 242, 781 S.E.2d 719 (2016)…………………………………………………………………………...5, 30

*Stogsdill v. S.C. Dep't of Health & Human Servs.*, 674 F.App'x 291 (4th Cir. 2017)..9

*Stratton v. Mecklenburg County Dep't of Soc. Servs.*, 521 Fed.Appx. 278 (4th Cir. 2013)………………………………………………………………………………33

*Vonrosenberg v. Lawrence*, 781 F.3d 731 (4th Cir. 2015)………………..………24

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)…………………………………..22

*Wogan v. Kunze*, 366 S.C. 583, 623 S.E.2d 107 (Ct. App. 2005)………………...38

## Statutes and Regulations

28 U.S.C. § 2201……………………………………………………………………21

42 U.S.C. 1396a(a)(3)…………………………………………………...……47

42 U.S.C. §1396n(c)(2)………………………………...............10, 12, 14, 16, 17

42 U.S.C. § 1983…………………………………………………….8, 9, 11

28 C.F.R. § 35.130(d)……………………………………………………..27

28 C.F.R § 35.135………………………………………………………27

28 C.F.R. § 41.51(d)…………………………………………………….27

42 C.F.R. § 431.210……………………………………………………….47

42 C.F.R. § 441.302……………………………………….........9, 12, 15, 16

S.C. Code Ann. § 1-13-20…………………………………………………...41

S.C. Code Ann. § 1-13-90…………………………………………………41

S.C. Code Ann. § 1-23-600………………………………………………32

S.C. Code Ann. § 44-6-30…………………………………………………....37

S.C. Code Ann. Regs. 126-125……………………………………………....37

**Rules**

Fed. R. App. P.28(a)(8)(A)……………………………………....…....22, 46

Fed. R. Civ. P. 7(a)…………………………………………………...17

Fed. R. Civ. P. 12…………………………………….…………....17

Fed. R. Civ. P. 17(c)………………………………………………41

Fed. R. Civ. P. 52(a)(1)……………………………………………8, 10

**Secondary Sources**

Erwin Chemerinsky, *Federal Jurisdiction* at 735 (3rd ed. 1999)…………………20

# JURISDICTIONAL STATEMENT

This action was filed in the district court's original jurisdiction based upon 28 U.S.C. § 1331 alleging the "violation of statutory and constitutional due process", "violation of the Americans with Disabilities Act", "violation of Section 504 of the Rehabilitation Act", "violation of the Medicaid Act", and "violation of 42 U.S.C. §§ 1983 and 1985 (Civil Rights). The action also presented a state law claim for the alleged "violation of the S.C. Administrative Procedure Act."

Final judgment was entered by the district court on July 25, 2017. Appellants Richard Stogsdill and Robert Levin (hereinafter sometimes collectively referred to as "Participants") filed their Notice of Appeal on July 27, 2017. Respondent South Carolina Department of Health and Human Services filed its Notice of Cross-Appeal on August 7, 2017.

# ISSUES PRESENTED FOR REVIEW

I.     THE DISTRICT COURT ERRED IN FINDING SCDHHS VIOLATED THE FEASIBLE ALTERNATIVES PROVISION OF THE MEDICAID ACT

II.    THE DISTRICT COURT ERRED IN DENYING SCDHHS'S MOTION FOR JUDGMENT ON THE PLEADINGS.

III.   THE DISTRICT COURT DID NOT ERR IN DISMISSING STOGSDILL'S CLAIMS

IV.    THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S ADA AND REHABILITATION CLAIMS

V.     THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S 42 U.S.C. § 1983 CLAIMS

## STATEMENT OF THE CASE

On June 4, 2012, Participants filed their initial Summons and Complaint with the United States District Court for the District of South Carolina seeking declaratory and injunctive relief against SCDHHS. [J.A., pp. 157-217]. Participants were granted leave to file and did file a Second Amended Complaint on January 2, 2014. [J.A., pp. 650-698]. The action identified the causes of action previously set forth.

Participants are Medicaid-eligible individuals who have been receiving services under either the South Carolina Intellectually Disabled and Related Disabilities ("IR/RD")[1] waiver or the Head and Spinal Cord Injury ("HASCI") waiver. Under these waivers, Participants receive a mix of services through the South Carolina Department of Disabilities and Special Needs ("SCDDSN"), which administers the day-to-day activities of the waiver programs in South Carolina through a contract with SCDHHS, which is the single state agency that administers Medicaid in South Carolina. Waivers are mechanisms within the Medicaid program under which, by having certain generic requirements of the Medicaid program "waived," states are able to provide services to eligible participants in ways not allowed under the regular Medicaid program. These and other waivers operated by SCDDSN are for home and community based services under Section 1915(c) of the

---

[1] The ID/RD waiver was formally known as the Mental Retardation and Related Disabilities Waiver ("MR/RD").

2

Social Security Act.  42 U.S.C. § 1396n(c).  These types of waivers allow services to be provided in the home or community in lieu of institutional services.

On January 1, 2010, the five (5) year renewal of the ID/RD and HASCI waivers, as approved by the Centers for Medicare and Medicaid Services ("CMS"), went into effect.  The renewed waivers included a cap or limit on some services and excluded others.  A summary of each Participant's services follows:

**Richard Stogsdill**:

Prior to the January 1, 2010 waiver changes, Stogsdill was receiving 69 hours of Personal Care Aide and Companion services per week.  In addition, Stogsdill also received approximately 36 hours per week of Respite Care.  Personal Care Aide II ("PCII") services consist of hands-on care that a participant requires for daily living (e.g. bathing, dressing, toileting, etc.).  Adult Companion services are similar to PCII services except they include an aspect of community integration.  Respite Care includes a range of services designed to provide care for the participant when the normal caregiver is absent or needs relief.  [J.A., pp. 2541-2543].

The Waiver effective January 1, 2010, capped any combination of PCII and Adult Companion services at 28 hours per week.  Respite Care services under the waiver effective January 1, 2010, is normally 68 hours per month, which under certain exceptions can be increased up to 240 hours per month.  [*Id.*].

Effective January 1, 2010, Stogsdill's services were as follows: 28 hours of PCII services (including Adult Companion services) per week; 68 hours of Respite Care services per month. An increase to 172 hours per month of Respite Care was granted following the January 2010 reductions at the request of Stogsdill's service coordinator. [*Id.*].

Effective January 1, 2010, Stogsdill's Occupational and Speech Therapies were discontinued, although there is evidence in the record that these services continue to be available to participants through the Medicaid State Plan. [*Id.*].

Stogsdill sought reconsideration by SCDDSN concerning the reduction in services and, after SCDDSN denied the reconsideration, Stogsdill appealed to the SCDHHS Appeals Division which affirmed the reductions. Subsequently, Stogsdill appealed the reduction of services to the South Carolina Administrative Law Court ("ALC") which has been statutorily appointed to perform the appellate review of final decisions from the South Carolina Department of Heath and Human Services. S.C. Code § 1-23-600(D). By Order dated March 13, 2013, the Administrative Law Court affirmed the reduction of services. [*Id.*]. Stogsdill appealed the decision to the South Carolina Court of Appeals. [*Id.*].

On September 10, 2014, the S.C. Court of Appeals reversed the ALC's finding that Stogsdill's risk of institutionalization was speculative and remanded for consideration of the appropriate services to be provided without consideration of the

2010 waiver restrictions.  *Stogsdill v. S. Carolina Dep't of Health & Human Servs.*, 410 S.C. 273, 285, 763 S.E.2d 638, 644 (Ct. App. 2014).

Stogsdill petitioned the South Carolina Supreme Court for a writ of certiorari, which was initially granted.  After briefing was complete and oral arguments had in the matter, the petition was dismissed as improvidently granted.  *Stogsdill v. S. Carolina Dep't of Health & Human Servs.*, 415 S.C. 242, 781 S.E.2d 719, *reh'g dismissed*, 784 S.E.2d 669 (S.C. 2016).

Stogsdill filed a petition for writ of certiorari to the United States Supreme Court.  *Richard Stogsdill v. South Carolina Dep't of Health & Human Servs.*, Docket No. 2014-002513, which was denied.

Currently, Stogsdill receives six (6) hours per week Personal Attendant I services, 148 hours per week PCII services, fourteen (14) hours per week nursing services, and 240 hours per month of Respite services.  [J.A. p. 5648, line 14-p. 5649, line 22].

**Robert Levin**:

Levin's Attendant Care/Personal Assistance Services were reduced from 56 hours per week to 49 hours per week effective January 1, 2010.  Levin's caregiver did not request reconsideration and he did not appeal the reduction of services to SCDHHS.  At the time of trial, Levin continued to receive 49 hours per week of attendant care from the same attendants he has had for the past year (or more).  Levin

5

is also authorized for 30 hours per year of back up emergency attendant care for use through an agency should one of his attendants not be available to provide his regularly scheduled care.  [J.A., p. 2543].  At the time the lawsuit was filed, Levin did not receive nursing care and nursing care had not been requested.  [J.A., pp. 2402-2408].

Currently, Levin is authorized to receive 84 hours per week nursing services and forty-two (42) hours per week attendant case services.  [J.A., p. 6633].

**District Court Order dated November 10, 2014:**

On July 30, 2014, Participants and SCDHHS filed cross-motions for summary judgment.  [J.A., pp. 863, 900].  By Order dated November 10, 2014, the district court declined to issue a declaratory judgment ruling on the issues raised by Stogsdill and determined that the district court was precluded from ruling on Stogsdill's state court claims under the *Rooker-Feldman*[2] doctrine.  [J.A., pp. 2540-2559].  In the alternative, the district court divested itself of hearing Stogsdill's case based on abstention principles.  [*Id.*].

As to Levin's due process claims, the district court granted SCDHHS judgment finding Levin neither requested reconsideration of the reduction of his services nor appealed the reduction of his services to SCDHHS, the proper agency

---

[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

to hear such requests. The district court concluded that Levin's failure to appeal the reduction of his services because he deemed the appeal process "futile" did not give rise to a violation of his due process rights. [J.A., pp. 2559-2566].

The cross-summary judgment motions were denied as to Levin's remaining claims. [*Id.*].

### District Court Order dated March 16, 2015:

In accordance with the district court's pre-trial order, a bench trial took place on February 24-25, 2015, for the threshold purpose of determining if the 2010 waiver reductions placed Levin at a significant risk of institutionalization. [J.A., pp. 2889-2890]. At the close of the case, SCDHHS made three (3) motions: 1) Motion to Amend Answer to Assert Affirmative Defense of Statute of Limitations; 2) Motion to Strike; and 3) Motion for Judgment as a Matter of Law. [*Id.*].

On March 16, 2015, the district court issued its Order addressing the three (3) motions as well as making findings of fact and conclusions of law following the bench trial as required by Fed. R. Civ. P. 52(a)(1).

The district court granted the motion to amend finding Levin's allegations of wrongful conduct *prior to* the 2010 waiver reductions were not pled in the Complaint, that a one (1) year statute of limitation applied and, as a result, Levin's ADA and Rehabilitation Act claims were time barred. [J.A., pp. 2896-2903].

The district court also granted the Motion to Strike evidence of a 2014 request for nursing services on the ground of ripeness. [J.A., pp. 2903-2906].

Finally, even thought the district court determined the ADA and Rehabilitation Act claims were untimely, the court addressed the merits of the claims. The district court determined that Levin did not meet his burden of establishing the reduction of services in 2010 placed Levin at a serious risk of institutionalization and, therefore, judgment as a matter of law as to the ADA and Rehabilitation Act claims was granted in favor of SCDHHS. [J.A., pp. 2907-2911].

**District Court Order dated April 20, 2015:**

Following the March 16, 2015 Order, the district court instructed the parties to brief the remaining 42 U.S.C. § 1983 claims. On April 20, 2015, the district court issued an order finding SCDHHS did not violate either the fair hearing provision or the reasonable promptness provision of the Medicaid Act. The district court ordered a second bench trial regarding the alleged violations of the feasible alternatives provision and protection of waiver participants provision of the Medicaid Act. [J.A., pp. 2963-2968].

**District Court Order dated July 28, 2015:**

A second bench trial was held on April 27, 28 and May 5, 2015. On July 28, 2015, the district court issued an Order setting forth findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1) addressing the remaining § 1983 claims.

Regarding the feasible alternative provision, the district court found SCDHHS violated that provision by not properly advising Levin of alternatives to institutional care, specifically, available services for nursing care. Specifically, the court found that SCDHHS, via the service coordinator, should have educated Levin's caregiver on nursing services available to Levin. [J.A., pp. 4530-4533].

With regard to the alleged violation of the protection of waiver participants, the district court determined that the regulation relied upon by Levin, 42 C.F.R. § 441.302(a), did not provide a private cause of action enforceable through 42 U.S.C. § 1983. [J.A., pp. 4524-4526].

**First Appeal**

Following the July 28, 2015 Order, a Notice of Appeal and Notice of Cross-Appeal were timely filed. *Stogsdill v. S.C. Dep't of Health & Human Servs.*, 674 F. App'x 291 (4th Cir. 2017). However, this Court concluded that the district court did not rule on the retaliation claims and, therefore, a final order was not issued by the district court that was reviewable on appeal. *Stogsdill*, 674 F. App'x at 293-94. The appeal was dismissed, and the case remanded to dispose of the retaliation issue. *Id*.

**District Court Order dated March 16, 2017**

On February 7, 2017, SCDHHS filed a Motion for Judgment on the Pleadings arguing the Second Amended Complaint failed to allege facts to constitute a cause of action for retaliation under the ADA. [J.A., pp. 4727-4734]. The motion was

denied by Order dated March 16, 2017, as the district court desired to "properly address the retaliation claims on remand." [J.A., pp. 5538-5541].

**District Court Order dated July 25, 2017**

A bench trial was held over four (4) days. The district court issued an Order setting forth findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1) addressing the retaliation claims. The district court concluded that the plaintiffs "failed to show by a preponderance of the evidence that [SCDDHS] retaliated against them in violation of the American with Disabilities Act and finds in favor of [SCDHHS]." [J.A., p. 7183].

## SUMMARY OF THE ARGUMENTS

I.    The district court erred in holding SCDHHS violated 42 U.S.C. § 1396n(c)(2)(C) by not specifically informing Levin of feasible alternatives to institutionalization where there was no evidence of the existence of a "choice" between receiving nursing services in an institution versus receiving the same services through the home and community-based waiver program.

II.    The district court erred in denying SCDHHS's Motion for Judgment on the Pleadings.

III.    The district court correctly dismissed Stogsdill's claims.

IV.    The district court correctly dismissed Levin's ADA and Rehabilitation Act claims on the grounds that they were time barred or, in the alternative, on the

merits as Levin failed to meet his burden of proving the reduction of his Medicaid services placed him at a serious or significant risk of institutionalization.

V.     The district court correctly dismissed Levin's 42 U.S.C. § 1983 claims finding that there was no evidence that Levin did not receive notice of his reduction in Medicaid services and that his due process rights were not violated where Levin did not seek reconsideration of his reduction in services or an appeal to SCDHHS.

## STANDARD OF REVIEW

The standard of review for a judgment following a bench trial is a mixed standard – factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo. *Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005).

## ARGUMENTS

## I.     THE DISTRICT COURT ERRED IN FINDING SCDHHS VIOLATED THE FEASIBLE ALTERNATIVES PROVISION OF THE MEDICAID ACT

As discussed above, following the March 16, 2015 Order dismissing Levin's ADA and Rehabilitation Act claims, the district court instructed Levin to file a brief outlining the "specific allegations" related to the remaining 42 U.S.C. § 1983 claims. [J.A., p. 2911].   On March 26, 2015, Levin filed the requested brief.   Regarding Levin's feasible alternatives issue, the following was provided:

Defendants and their agents have failed to inform waiver participants about 'any feasible alternatives available under the waiver' as required by § 1396n(c)(2); 42 C.F.R. 441.302(d). For example, they have failed to inform Plaintiffs and other waiver participants that the caps may not be enforced, because they were established without promulgating regulations and the ALC has repeatedly held them to be unenforceable. [internal citations omitted].

[J.A., p. 2921].

42 U.S.C. § 1396n(c)(2) provides in relevant part:

(2) A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that— . . .

(C) such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded; . . .

Similarly, 42 C.F.R § 441.302(d) provides,

Unless the Medicaid agency provides the following satisfactory assurances to CMS, CMS will not grant a waiver under this subpart and may terminate a waiver already granted: . . .

(d) *Alternatives*—Assurance that when a beneficiary is determined to be likely to require the level of care provided in a hospital, NF, or ICF/IID, the beneficiary or his or her legal representative will be—

(1) Informed of any feasible alternatives available under the waiver; and

(2) Given the choice of either institutional or home and community-based services.

Levin's mother, Ms. Self, decided she would transition Mr. Levin from an institution to her home in or around 2005, and she consulted with HASCI caseworkers. Ms. Self was informed of what could be done in terms of providing services and equipment to transition him from an institution into a home setting which was the least restrictive setting; this was HASCI's goal. [J.A., p. 4309, line 21-p. 4310, line 4]. In preparation for the transition, HASCI took Mrs. Self on home visits to meet people and to see how these families set up their homes to learn what worked and what did not work. [J.A., p. 4311, lines 9-17]. The preparation took approximately one year, but Levin was transitioned to his home setting in 2006 and has remained there ever since. [J.A., p. 4313, lines 9-10; p. 3589, lines 4-6].

Upon returning home in 2006 until the 2010 HASCI waiver reductions went into effect, Levin received eight hours per day of personal attendant care. After the 2010 HASCI waiver reductions went into effect, Levin received 49 hours per week of personal attendant care under the waiver program. [J.A., p. 4402, line 12-p. 4403, line 1]. However, Levin has never faced the issue of possibly being institutionalized since returning home in 2006. [J.A., p. 3592, line 20-p. 3593, line 4; p. 4406, line 4-p. 4407, line 2].

Not only has Levin not faced the possibility of being institutionalized since leaving a nursing home in 2006, there is no evidence in the record that Ms. Self or any other person on behalf of Levin ever expressed any concern over the services

provided to Levin or otherwise provided any indication that some form of additional attendant services may be needed. [J.A., p. 4405, line 23-p. 4406, line 2].

SCDHHS argued that in the absence of Levin's risk of re-institutionalization or any evidence which would tend to show that there may be a need for increased services, that it did not have to advise Levin of feasible alternatives, specifically nursing services. [J.A., pp. 4530-4531]. The district court disagreed with this interpretation and found that the waiver program's purpose is to provide home and community-based services, that would otherwise be provided in an institutional setting, to avoid institutionalization. [J.A., pp. 4531-4532]. While the court noted that "SCDHHS is not required to apprise participants of every possible alternative . . .", since all waiver participants are at some risk of institutionalization, the statute imposes a "continuing obligation to provide participants with the feasible alternatives under the program, to the extent the participant qualifies for services. [*Id.*]. This finding was in error.

42 U.S.C. § 1396n(c)(2)(C) requires states to inform covered individuals about any options available under a waiver program for home and/or community-based care and allow individuals to choose a waiver option as opposed to institutionalization. *Illinois League of Advocates for Developmentally Disabled v. Illinois Dep't of Human Servs.*, 60 F. Supp. 3d 856, 885-86 (N.D. Ill. 2014), *aff'd sub nom. Illinois League of Advocates for the Developmentally Disabled v. Illinois*

*Dep't of Human Servs.*, 803 F.3d 872 (7th Cir. 2015). The court further determined that "[t]he interpreting regulations comport with this reading and expressly provide that covered individuals or their representatives must be both: '(1) Informed of any feasible alternatives available under the waiver; and (2) Given the choice of either institutional or home and community-based services.'" *Id. citing* 42 C.F.R. § 441.302(d); *see also Doe v. Kidd*, 501 F.3d 348, 359 (4th Cir. 2007) (stating "Section 1396n of the Act merely requires states to inform participants in the waiver program of "the *feasible* alternatives, *if available* under the waiver, at the choice of individuals, to the provision of ... services in an intermediate care facility for the mentally retarded.").

As stated by the Court of Appeals for the Seventh Circuit, to be eligible for the waiver, the state "must make sure that the *individuals likely to need institutional care* 'are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded.'" *Illinois League of Advocates for the Developmentally Disabled.*, 803 F.3d at 877 (emphasis added); *see also Doe v. Kidd*, 419 F. App'x 411, 418 (4th Cir. 2011) (stating waiver participant had right to refuse suggested facility thereby obligating agency to present her with "feasible alternatives" for the provision of residential habilitation services at a suitable care facility of her choice *citing* 42

U.S.C. § 1396n(c)(2)(C) and 42 C.F.R. § 441.302(d)(2) which state waiver program participants are to be "[g]iven the choice of either institutional or home and community-based services.").

In the present case and as discussed above, the only time Levin was in a position to make a choice between institutionalization and care in a home-based setting occurred when he was in a nursing home in 2005-2006. The evidence at trial clearly established that Ms. Self was advised of the services available to transition Levin from the institution to her home and, in fact, that transition occurred on 2006. Moreover, and as discussed above, there was no evidence at trial to suggest Levin was ever *likely* to reenter an institution at any point in time since 2006. Additionally, there was no evidence at trial to suggest any concerns being expressed to SCDHHS or its agents regarding the need or desire for additional personal care for Levin.

As Levin's only "choice" regarding whether he would receive services in an institution versus at home through the waiver program occurred in 2006, and feasible alternatives were provided to him at that time which allowed his transition from an institution to the home, it was err for the district court to find SCDHHS violated 42 U.S.C. § 1396n(c)(2)(C) by not specifically informing Levin of nursing services. *Illinois League of Advocates for the Developmentally Disabled*, 803 F.3d at 877; *see also*, *Kidd*, 501 F.3d at 359 (finding the only choice Doe placed into the record was

choice between institutional or home-based and community-based services as a part of the waiver program, a choice that Doe was already given).

Additionally, while the district court noted SCDHHS is not required to inform participants of every possible alternative, in the absence of any evidence of possible institutionalization or even complaints or concerns about attendant care for Levin, the court's ruling essentially would require SCDHHS through its agents to inform every waiver participant of every waiver service available so long as the individual remains in the waiver program. *See Illinois League of Advocates for the Developmentally Disabled*, 803 F.3d at 878 (stating § 1396n(c)(2)(C) "does not require a state to offer any particular option; it 'just requires the provision of information about options that are available'").

## II. THE DISTRICT COURT ERRED IN DENYING SCDHHS'S MOTION FOR JUDGMENT ON THE PLEADINGS

Failure to state a claim upon which relief can be granted may be raised "in a pleading allowed or ordered under Rule 7(a); by motion under Rule 12(c), or at trial." Fed. R. Civ. P. 12(h)(2). In ruling on a Fed. R. Civ. P. 12(c) motion, the court should apply the same standard used in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Sherrod v. Harkleroad*, 674 F. App'x 265, 266 (4th Cir. 2017). Thus, the Court should "assume all facts alleged are true and draw all reasonable inferences in favor of the plaintiff to determine whether the complaint

alleges a set of facts sufficient to state a claim that is 'plausible on its face.'" *Id.*
*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *citing Twombly*, 550 U.S. 544. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 *citing Twombly*, 550 U.S. at 557.

> The ADA's retaliation provision provides, in relevant part, that "[n]o person shall discriminate against any individual because such individual ... made a charge ... under this Chapter." 42 U.S.C. § 12203(a). To establish a prima facie retaliation claim under the ADA, plaintiffs must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011).

The Second Amended Complaint set forth 267 paragraphs of allegations. Of the 267 paragraphs, five (5) contained factual allegations regarding retaliation.

Paragraphs 113, 114, 187, 188 and 189 alleged Lennie Mullis, a non-party, provided a sworn declaration in Support of Richard Stogsdill's need for additional services and, after providing the declaration, her contract as a Medicaid waiver services provider was terminated. A footnote alleged this was the second-time Ms. Mullis was terminated after advocating for waiver participants. It was also alleged that SCDHHS and its agent retaliated "against other persons" who have exposed abuse or neglect or supported claims for services. [J.A., p. 671, ¶¶ 113-114, fn 5; p. 683, ¶¶ 187-189].

The Second Amended Complaint failed to allege SCDHHS or its agents retaliated against any of the plaintiffs. Moreover, the Second Amended Complaint failed to allege any facts to establish a prima facie retaliation claim under the ADA to include, "(1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action."[3] *A Soc'y Without A Name*, 655 F.3d at 350.

While Appellants often assert they are bringing this case on behalf of all Medicaid participants as private attorney generals,[4] "a private stake is essential [in an ADA claim] and the ADA does not permit private plaintiffs to bring claims as

---

[3] It is appropriate to note that while this Court expressed no opinion as to whether the retaliation claim should survive a motion to dismiss, it noted there was "minimal factual development" of those claims. *Stogsdill*, 674 F. App'x at 293-94.

[4] *See* Doc 42, p. 53.

private attorney generals to vindicate other people's injuries." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (stating injunctive relief "is the only relief available to *private plaintiffs* under the ADA" (emphasis added)).

Accordingly, the district court erred in denying the Motion for Judgment on the Pleadings.

## III. THE DISTRICT COURT DID NOT ERR IN DISMISSING STOGSDILL'S CLAIMS

Stogsdill argues the district court erred in dismissing his claims on the grounds of abstention. "The term abstention refers to judicially created rules whereby federal courts may not decide some matters before them even though all jurisdictional and justiciability requirements are met." Erwin Chemerinsky, *Federal Jurisdiction* at 735 (3rd ed. 1999). There are many various abstention doctrines and principles used by courts in deciding whether to retain jurisdiction over a subject matter. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814-817 (1976) (discussing three general categories of abstention); *Chase Brexton Health Servs., v. Maryland*, 411 F.3d 457, 462 n.1 (4th Cir. 2005) (listing examples of categories where federal courts have the power to refrain from exercising jurisdiction). The district court correctly applied a number of these doctrines and principles in deciding to dismiss Stogsdill's claims.

First, the district court declined to issue a declaratory judgment as to Stogsdill's claims pursuant to the court's exercise of discretion under the Declaratory Judgments Act, 28 U.S.C. § 2201. [J.A., pp. 2544-2547]. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Next, the district court invoked the *Rooker-Feldman* doctrine to find that the court could not review the decisions made in Stogsdill's state court action. [J.A., pp. 2547-2549]. Then, the district court refrained from hearing Stogsdill's claims pursuant to the *Colorado River* abstention doctrine. [J.A., pp. 2552-2557]. Finally, the district court applied *Burford* abstention to decline jurisdiction of Stogsdill's claims.[5] [J.A., pp. 2557-2559].

## A. Stogsdill has abandoned any challenge to the district court's rulings concerning the dismissal of his claims.

Initially, SCDHHS asserts that Stogsdill's arguments concerning abstention are moot. The failure of an appellant to "actually address and analyze what it is about the lower court's decision they contend was error" will result in abandonment of the issue. *North American Precast, Inc. v. General Cas. Co. of Wis.*, 413 Fed.Appx. 574 (4th Cir. 2011). An appellant must include his "'contentions and the

---

[5] While not a separate abstention doctrine, the district court also discussed *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007), and *Doe v. Kidd*, 419 Fed. Appx. 411 (4th Cir. 2011) (hereinafter referred to respectively as *Doe v. Kidd I* and *Doe v. Kidd II*), finding that they did not bar the district court from invoking abstention principles. (J.A., p. 2553).

reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Id.*, quoting Fed. R. App. P. 28(a)(8)(A).

In his brief, Stogsdill very generally argues that the district court erred in dismissing his claims on the grounds of abstention. However, in addressing the district court's decision not to exercise jurisdiction under the Declaratory Judgments Act, Stogsdill states in a conclusory fashion that the court's reliance upon *Brillhart*, *supra*, and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), was erroneous because "it was the district court's decision to abstain and bifurcate the trial that resulted in drawn-out piecemeal litigation and extended delays, which could have been avoided had the district court simply proceeded to trial on all of Stogsdill's claims." [Doc 42, p. 57]. Stogsdill's conclusory statement fails to address any of the four (4) factors identified and addressed by the district court in its Order dismissing Stogsdill's claims. [J.A., pp. 2554-2547].

Accordingly, even if the district court erred in dismissing Stogsdill's claims on the other abstention grounds discussed, the issue is moot as the district court correctly elected not to exercise jurisdiction under the Declaratory Judgments Act, which has been abandoned by Stogsdill on appeal.

**B. The district court correctly found that Stogsdill's claims should be dismissed pursuant to the *Colorado River* doctrine.**

Initially, the district court reviewed its jurisdiction over Stogsdill's claims for declaratory relief pursuant to the court's discretion to take jurisdiction under the Declaratory Judgments Act. The district court applied and reviewed the factors set forth in *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996) before declining to issue a declaratory ruling.

In reviewing the *Centennial* factors, the district court made a number of findings that are unchallenged by Stogsdill. The district court correctly found that Stogsdill's current claims in federal court are analogous to his claims in state court for violations of due process, the South Carolina Administrative Procedure Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. [J.A., p. 2546]. The court also found that the parties have fully presented all claims and defenses in the state court action. [*Id.*]. The court found that there existed overlapping issues of law and fact, and that the state court had a vested interest in dealing with the claims because they implicated a state agency's administration of its own regulatory scheme. [*Id.*].

The district court recognized that the state court of appeals had recently issued an opinion, which clearly showed that the state court was ready, willing and able to fully adjudicate the analogous issues. [*Id.*]. Therefore, the district court found a great potential for entanglement between the federal and state courts which might result

in disparate rulings and additional time and expense. [J.A., p. 2547]. Ultimately, the district court declined to take jurisdiction of Stogsdill's declaratory claims. [*Id.*].

Subsequent to the district court's dismissal of Stogsdill's claims, this Court decided *Vonrosenberg v. Lawrence*, 781 F.3d 731 (4th Cir. 2015). Prior to the court's ruling in *Vonrosenberg* there may have been some uncertainty as to whether the *Brillhart/Wilton* standard, or the *Colorado River* standard, would control in an action asserting claims for declaratory and injunctive relief. *See Great American Ins. Co., v. Gross*, 468 F.3d 199, 210-212 (4th Cir. 2006). *Vonrosenberg* cleared up any confusion and held that the *Colorado River* standard "must guide a court's decision to abstain from adjudicating mixed complaints alleging claims for both declaratory and nondeclaratory relief." *Vonrosenberg*, 781 F.3d at 735. Thus, had the district court relied solely on the *Brillhart/Wilton* standard to decline jurisdiction, it might have been necessary to remand this case for a determination under *Colorado River* standard. However, the district court thoroughly and correctly applied the *Colorado River* standard in deciding whether to abstain. Moreover, the district court made unchallenged factual findings in its discussion of the *Brillhart/Wilton* factors, findings which also have bearing on abstention under the *Colorado River* standard.

This Court should review a district court's abstention on *Colorado River* grounds for an abuse of discretion. *Sto Corp. v. Lancaster Homes, Inc.*, 11

Fed.Appx. 182, 186 (4th Cir. 2001); *Gross*, 468 F.3d at 205 (reviewing the district court's abstention decision for an abuse of discretion).

"The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits." *Gross*, 468 F.3d at 207. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America*, 946 F.2d 1072, 1073 (4th Cir. 1991). Richard Stogsdill, and his mother, sued SCDHHS and Anthony Keck, in his official capacity as Director of SCDHHS. The district court dismissed Keck, correctly finding that the official capacity suit against him was duplicative of the suit against SCDHHS. [ECF Entry 131, pp. 21-22]. This ruling is unappealed. Therefore, the only difference, which is not substantial, in the identity of the parties is the addition of Nancy Stogsdill to the federal suit. Nancy Stogsdill's claims are identical to Stogsdill's claims – there is no distinction made between Richard and Nancy's claims in the Second Amended Complaint. [J.A., pp. 650-698]. Therefore, the parties are substantially the same in both actions. *See Sto Corp.*, 11 Fed.Appx. at 187 (stating that parties need only be substantially identical for the *Colorado River* doctrine to apply).

The issues in both suits are also identical. Stogsdill does not dispute this finding by the district court. In fact, Stogsdill appears to concede that the suits are parallel by failing to dispute the finding.

As the district court correctly found, the issues in the state and federal actions are substantially the same. In the state action, Stogsdill claimed that the enactment of the waiver cap was unlawful and violated the South Carolina Administrative Procedures Act ("APA"). *Stogsdill v. S.C. Dep't of Health and Human Servs.*, 410 S.C. 273, 277, 763 S.E.2d 638, 640 (Ct. App. 2014). Stogsdill also alleged violations of his due process rights because he did not receive adequate notice of a reduction in waiver services. *Id.* at 281, 763 S.E.2d at 642. Next, Stogsdill claimed that the application of the waiver caps would cause a significant risk of institutionalization in violation of the Americans with Disabilities Act as set forth in *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999). *Id.* at 282-284, 763 S.E.2d at 642-643. Stogsdill also contended that SCDHHS had not met its burden in establishing its fundamental-alteration defense to the accommodation of a waiver participant's needs. *Id.* at 285-286, 763 S.E.2d at 644.

The district court correctly found that Stogsdill "has brought the exact same claims as those brought in his state court action." [J.A., p. 2555]. The action captioned as "Second Amended Complaint for Injunctive Relief" identifies as causes of action "violation of statutory and constitutional due process", "violation of the

S.C. Administrative Procedures Act", "violation of the American with Disabilities Act", "violation of Section 504 of the Rehabilitation Act", "violation of the Medicaid Act", and "violation of 42 U.S.C. §§ 1983 and 1985 (Civil Rights)". [J.A., p. 650].

In the federal action, Stogsdill alleges that SCDHHS violated the APA by establishing caps without promulgating regulations or providing due process protections. [J.A., p. 651, ¶ 6; p. 660, ¶51; p. 679, ¶ 161]. He alleges that SCDHHS has refused to promulgate regulations for the administration of the waiver program. [J.A., p. 681, ¶ 178; p. 682, ¶181]. Stogsdill also alleges that the reductions in waiver services puts him at risk of institutionalization in violation of the "integration mandate" of Title II of the ADA and Section 504 of the Rehabilitation Act, 28 C.F.R. §§ 35.135, 35.130(d), 41.51(d). [J.A., p. 684, ¶ 194; p. 686, ¶ 204].

Therefore, it is clear that the claims being made and the relief sought in the state court are identical to that in the federal action. Stogsdill is not seeking money damages in either action. Rather, in each action, Stogsdill seeks declarations of his rights and orders requiring a state agency to promulgate regulations, provide due process, and provide services to comply with the integration mandate.

The form of abstention recognized as the *Colorado River* doctrine is "abstention in favor of ongoing, parallel state proceedings in cases where 'considerations of wise judicial administration, giving regard to conservation of judicial resource and comprehensive disposition of litigation clearly favor

abstention." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013), quoting *Colorado River*, 424 U.S. at 817. "The basic notion underlying the Colorado River doctrine is that in certain circumstances it may be appropriate for a federal court to refrain from exercising its jurisdiction to avoid duplicative litigation." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000). "In certain limited instances, federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Gross*, 468 F.3d at 206 (internal citations and quotes omitted). "These 'exceptional circumstances' inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations." *Chase Brexton*,411 F.3d at 462.

> If parallel suits exist, then a district court must carefully balance several factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927. Although the prescribed analysis is not a "hard-and-fast" one in which application of a "checklist" dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; *464 (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Id.* at 15–16, 19–27, 103 S.Ct. 927; *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. 1236;

> *McLaughlin,* 955 F.2d at 934–35. In the end, however,
> abstention should be the exception, not the rule, and it may
> be considered only when "the parallel state-court litigation
> will be an adequate vehicle for the complete and prompt
> resolution of the issues between the parties." *Moses H.
> Cone,* 460 U.S. at 28, 103 S.Ct. 927.

*Chase Brexton*, 411 F.3d at 463-64.

The district court analyzed these factors in its order granting summary judgment. The first factor, concerning *in rem* jurisdiction, does not provide any support for abstention. Likewise, as the district court recognized, the federal forum would not be inconvenient for the parties, so the second factor does not come in to play.

The district proceeded to analyze the relevant order of the two suits and the progress achieved in each action. The district court recognized that Stogsdill's proceedings before the state agency began in 2009, and that the federal suit had been filed in 2012. [J.A., p. 2556]. The state administrative law court issued a final, appealable order on March 13, 2013, well before the district court had taken any type of dispositive action on Stogsdill's claims. [J.A., pp. 787-797].

Despite Stogsdill's grumblings about the pace of the litigation in the state courts, it is clear that the state court case has made substantial progress and has issued numerous rulings on the issues raised in the federal action. The South Carolina Court of Appeals found that the enactment of the waiver caps was lawful and did not violate the APA. *Stogsdill*, 410 S.C. at 280, 763 S.E.2d at 642. The

court of appeals also held that Stogsdill's due process rights had not been violated and that he had fully exercised his opportunity for a hearing and judicial review. *Id.* at 281-282, 763 S.E.2d at 642. More importantly, the Court of appeal held that the lower court erred in concluding that Stogsdill's risk of institutionalization was speculative. *Id.* at 285, 763 S.E.2d at 644. The court of appeals remanded the matter to the state agency "for an assessment of required hours and services without reference to the caps in the Waiver." *Id.* at 286, 763 S.E.2d at 644.[6] In other words, the court of appeals found that the application of the waiver caps to Stogsdill's case violated the integration mandate.

On this factor – the relevant order and the progress of the two suits – the district court correctly found that the priority of the state action, and its progress, counseled in favor of abstention.

Next, the district court examined the desirability of avoiding piecemeal litigation and whether the state proceeding would adequately protect Stogsdill's rights. It is apparent that the issues in this action and the state action are similar.

---

[6] Stogsdill filed a petition for writ of certiorari to the state supreme court. The supreme court granted the writ but then dismissed the writ as improvidently granted. *Stogsdill v. S.C. Dep't of Health & Human Servs.*, 415 S.C. 242, 781 S.E.2d 719 (2016). Stogsdill then filed a motion to vacate the dismissal of the writ. (Doc 31-1, p. 30). Stogsdill petitioned the United States Supreme Court for a writ of certiorari. *Stogsdill v. S.C. Dep't of Health & Human Servs.*, 415 S.C. 242, 781 S.E.2d 719 (2016), *petition for cert. filed*, (U.S. Apr. 22, 2016) (No. 15-9040), which was denied.

The litigation in this court, especially in regard to the integration mandate issues, might include factual findings necessary to resolve the issue on remand to the state agency. Thus, the danger of piecemeal litigation is heightened where there are no marked differences between the critical factual and legal issues presented in the different forums. *Cf. Gross*, 468 F.3d 209 (finding a danger of piecemeal litigation remote where there existed marked differences in factual and legal issues in each forum). For example, Stogsdill was asking the district court to make a determination of whether the cuts imposed by the waiver program put him at risk of institutionalization in violation of the ADA's integration mandate. This is the same issue addressed in the state system, decided by the court of appeals, and remanded to the state agency.

The district court correctly concluded that the parties' rights were being adequately protected by the state court proceedings. This factor looks to whether a party's rights are being adequately protected, not whether a party will eventually achieve the desired redress. It is clear that Stogsdill's rights are certainly enforceable in the state courts despite Stogsdill's anecdotal claims otherwise. While it is understandable that Stogsdill may have desired further relief in the state court, at this point he has received a favorable ruling on whether the waiver cuts put him at risk of institutionalization.

The district court properly evaluated these factors and correctly determined in its discretion that they weighed in favor of abstention.

The remaining factor – the source of law in the case – seems related to the previous factor of whether the parties' rights were being adequately protected by the state court proceedings. The claims in this case raise issues of state law (APA) and federal law. The state court system is well-versed to deal with issues arising under the APA. The decision on appeal in the state court originated from the Administrative Law Court, the specific court set up to preside over appeals from final decisions of contested cases pursuant to the APA. S.C. Code Ann. § 1-23-600. While federal law may supply some of the rights asserted in this case, the state regulatory system is set up to deal with this federal law and decisions made by state agencies applying this law. Even though one of the sources of law here is federal, given that "DHHS is the agency that administers the South Carolina Medicaid Program and is responsible for the overall administration of the Waiver," the source of law should not be a large concern and does not weigh towards retaining jurisdiction. [J.A., p. 789].

After a review of the relevant factors, and considering the policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations, it can be concluded that the district court did not abuse its discretion in finding exceptional circumstances warranted the dismissal of Stogsdill's claims.

**C. The district court correctly found that the *Rooker-Feldman* doctrine barred consideration of Stogsdill's claims.**

In addition to its decision to dismiss Stogsdill's claims pursuant to the Colorado River doctrine, the district court evaluated the *Rooker-Feldman* doctrine and correctly ruled that it should abstain from issuing a ruling on Stogsdill's claims.

This Court will review *de novo* a district court's dismissal of claims for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. *Stratton v. Mecklenburg County Dep't of Soc. Servs.*, 521 Fed.Appx. 278 (4th Cir. 2013). This Court's "evaluation of an appeal is not limited to the grounds relied upon by the district court, however, and [the Court] is entitled to affirm on any basis apparent from the record." *Id.*

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district court review and rejection of the [state court's] judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under this doctrine, district courts cannot be "called upon . . . to overturn an injurious state-court judgment." *Id.* at 291-292.

Despite the apparently limited application of this doctrine, Stogsdill is, in all practical manner, the loser in state court on many issues and he is challenging the rulings made in the state court system. The court of appeals has found that the

enactment of the waiver caps did not violate the APA, and that Stogsdill's due process rights were not violated.

At the time Stogsdill filed his suit these rulings had not been issued, so Stogsdill's Second Amended Complaint did not directly challenge these decisions. Now that these decisions have been rendered by the court of appeals, Stogsdill still seeks to have the district court, in effect, review these decisions by hearing these issues and rendering decisions in conflict with the state court decisions.[7]

And, despite receiving a favorable ruling in the state court on his claim concerning whether the application of the caps violated the ADA, Stogsdill seeks a review of that decision. The state court ordered a remand to the state agency for an assessment of the required services without reference to the Waiver caps. Now, Stogsdill seeks a declaration that SCDHHS has violated the ADA, and an "order directing Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, based on written plans of care approved by their treating physicians." [J.A., p. 696 ¶ 263]. In other words, Stogsdill wants to override the state court's

---

[7] At this point, based on the state court rulings on these issues, the doctrines of res judicata and collateral estoppel may preclude these claims. *See Exxon Mobil*, 544 U.S. at 293 (stating that once the state action is complete, the disposition of the federal action would be governed by preclusion law).

decision and have the federal court directly order the provision of services. Stogsdill seeks a ruling that would bypass the remand ordered by the Court of appeal.

Stogsdill was the loser in state court on some issues now sought to be litigated in the district court. He lost on the APA and due process issues, and has petitioned for *certiorari*, which was denied.

It is important to note that while Stogsdill's allegations in the Second Amended Complaint did not directly challenge the state court decisions, it is clear from comments made at oral argument that Stogsdill is clearly trying to do so. For instance, as concerns the due process issue, Stogsdill admitted that he lost on the APA issue. [J.A., p. 2570, lines 18-19]. Stogsdill also admitted that the court of appeals found that his due process rights were not violated. [J.A., p. 2571, lines 1-5]. Stogsdill then argued that the district court should accept the factual determination made by the court of appeals – that proper notice had not been provided – and that the district court was not bound by the court of appeals' legal conclusion that there was no prejudice to Stogsdill. [J.A., p. 2571, lines 11-24]. In other words, Stogsdill is alleging error in the court of appeals' decision and asking the district court to come to a different decision on that same issue. This is the reason for the *Rooker-Feldman* doctrine. Clearly, under this doctrine, the district court cannot challenge the decision in this manner. Stogsdill has already litigated this issue and received a ruling in the state system. He now seeks a review of that ruling,

and a different decision by the district court. Stogsdill's claim here is not independent – he is asking the district court to be bound by the state court's factual determination, but to come to a wholly different legal conclusion.

Stogsdill maintains that the state court decisions were injurious to him. He now seeks to have the district court render different decisions. [J.A., p. 2621, line 17-p. 2622, line 14]. Under this scenario, the district court correctly found that the *Rooker-Feldman* doctrine barred Stogsdill's claims.

## D. The district court correctly found that *Burford* abstention should apply and that Stogsdill's claims should be dismissed.

"Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobil Corp.*, 544 U.S. at 292. One of these doctrines, known as *Burford* abstention, was applied by the district court to decline jurisdiction of Stogsdill's claims.

"Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs." *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999). In cases "where state courts can fully vindicate any federal interest that may arise[,] Burford abstention requires that [the court] assess the interest in having federal rights adjudicated in federal court against state interests in the control of state regulatory programs. . . . The adequacy of state

court review diminishes plaintiffs' interest in a federal forum." *Id.* at 723. Pursuant to *Burford*, federal courts should "abstain from deciding cases (1) that present 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar' or (2) whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* at 719, quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989).

SCDHHS is the single state agency responsible for the administration of the state's Medicaid plan. S.C. Code Ann. § 44-6-30. "South Carolina has promulgated an extensive regulatory scheme for the administration of its Medicaid program." *See* S.C. Code Ann. Regs. 126-125 *et seq.* In fact, "[w]hen waiver services are reduced, terminated or not provided with reasonable promptness, the participant must seek reconsideration by DDSN, then file an appeal with DHHS . . . and, finally appeal to a third Executive Branch agency, the Administrative Law Court." This regulatory scheme was envisioned by Congress in its enactment of the Medicaid Act.

> [T]he Medicaid Act actually mandates that the participating states create a voluntary administrative process whereby beneficiaries may seek redress for an allegedly wrongful withholding of benefits. *See* 42 C.F.R. § 438.228 (mandating that each participating state ensure that all Medicaid managed care organizations have a grievance system in effect). This mandate is evidence that Congress anticipated that the states would provide the

> remedy for vindication of the guidelines and waiver
> provisions of the Medicaid Act. In other words, there is a
> remedy available to plaintiffs for the wrong they allege in
> a state-created forum, rather than in federal court.

*Wogan v. Kunze*, 366 S.C. 583, 594, 623 S.E.2d 107, 114 (Ct. App. 2005), *aff'd as*

*modified*, 379 S.C. 581, 666 S.E.2d 901 (2008) (quoting *Solter v. Health Partners of*

*Philadelphia, Inc.*, 215 F. Supp. 2d 533, 539 (E.D. Pa. 2002)).

The Medicaid Act "confers broad discretion on the States to adopt standards

for determining the extent of medical assistance" offered in their Medicaid

programs. *Beal v. Doe,* 432 U.S. 438, 444 (1977).

In this case, Stogsdill seeks injunctive relief against the state agency

responsible for the administration of the state's Medicaid program. In fact, Stogsdill

seeks to have the district court instruct the agency to order services and enact certain

regulations. [J.A., p. 682 ¶¶ 181, 182; p. 696 ¶ 263]. Stogsdill would have the

district court usurp the legislative and regulatory scheme to have the court order the

promulgation of Waiver regulations pursuant to the APA. The issuance of such

injunctive relief would completely bypass the comprehensive scheme specifically

set up for the administration of Waiver services. In essence, Stogsdill is asking the

district court to invoke its "'inherent equitable power' to undertake a basic state

regulatory function." *Johnson v. Collins Entertainment Co.*, 204 F.3d 573 (4th Cir.

2000). Stogsdill wants the district court to take full control, to the exclusion of the

state system. Stogsdill wants the district court to specifically instruct the state

agency in how to issue notices and conduct hearings at the administrative level. [J.A., pp. 681-682 ¶¶ 174, 181, 182; p. 696 ¶ 264]. Such an assumption of state regulatory prerogatives is impermissible, and *Burford* abstention is appropriate.

## IV. THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S ADA AND REHABILITATION CLAIMS

### A. The district court correctly found the claims were time barred.

Levin asserts that the district court erred in allowing SCDHHS to amend its Answer to assert a statute of limitations defense.

Fed. R. Civ. P. 15(a), in pertinent part, provides that when a party moves to amend a pleading, "leave shall be freely given when justice so requires." *Jones Eng'g Sales, Inc. v. Faulkner/Baker & Associates, Inc.*, 199 F.3d 1327 (4th Cir. 1999). "An affirmative defense that is not asserted in a responsive pleading is generally deemed waived." *Jones v. Miles*, 656 F.2d 103, 108 (5th Cir. 1981). "Even so, in practice an affirmative defense is not waived to the extent that the . . . opposing party's own evidence discloses the defense, necessarily indicating his express consent." *Id.*

The motion to amend the Answer to assert a statute of limitations defense occurred as a direct result of allegations made at trial regarding purported ADA and/or Rehabilitation Act violations that occurred in 2006, when the Second Amended Complaint only made reference to events that occurred due to the 2010

reduction in waiver services. [J.A., p. 4362, line 20-p. 4364, line 12]. Therefore, it was proper to allow SCDHHS to amend its Answer to assert a statute of limitations defense based upon allegations of wrongdoing in 2006 which were not pled and raised for the first time by Levin at trial. *Jones*, 656 F.2d at 108.

Next, Levin argues the district court erred in applying a one-year statute of limitations. Levin argues the district court should have adopted a three (3) years statute of limitations as the ADA and Rehabilitation claims are most analogous to personal injury actions in South Carolina.

This Court has previously stated that when determining what statute of limitations period governs ADA claims, the same substantive analysis should be used for both the ADA and the Rehabilitation Act "[b]ecause the language of the two statutes is substantially the same." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). This Court went on to find that, as with a Rehabilitation Act claim, an ADA claim in Virginia was most analogous to the Virginia Disabilities Act, which provided a one (1) year statute of limitation. *A Soc'y Without A Name*, 655 F.3d at 347-348.

In the present case, the district court correctly determined that the S.C. Human Affairs Law is most analogous to the ADA and Rehabilitation Act in South Carolina. As specifically stated in the S.C. Human Affairs Law,

> The General Assembly declares the practice of discrimination against an individual because of race, religion, color, sex, age, national origin,

*or disability* as a matter of state concern and declares that this discrimination is unlawful and in conflict with the ideals of South Carolina and the nation, as this discrimination interferes with opportunities of the individual to receive employment and to develop according to the individual's own ability and is degrading to human dignity. . . .

S.C. Code Ann. § 1-13-20 (emphasis added).

As the S.C. Human Affairs Law is most analogous to claims of discrimination under the ADA and Rehabilitation Act, it was proper for the district court to borrow the one (1) year statute of limitations. S.C. Code 1-13-90(d)(7) and (8), (e) and (f).

Levin also argues the district court erred in borrowing a state statute of limitations without also borrowing any corresponding tolling provision. The testimony in this matter revealed that Ms. Self was appointed to be Levin's guardian in 2002. *See* Fed. R. Civ. P. 17(c) (stating a general guardian may sue or defend on behalf of a minor or an incompetent person). Ms. Self's appointment as guardian in 2002 served to remove any disability.

In a situation such as this where a guardian has been appointed, the guardian is charged with the duty of bringing an action on behalf of the guardian's ward and the statute of limitations is not tolled. The rationale of such a doctrine has been stated as follows: "since an infant represented by a guardian has the capacity, despite his infancy, to bring suit through his guardian, there is no need to suspend the running of the statute of limitations." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979).

It appears that this doctrine has been adopted by the courts in South Carolina. In *Long v. Cason*, 25 S.C. Eq. (4 Rich. Eq.) 60 (1851), the court was faced with an issue whether a former ward of a guardian had lost the right to sue the guardian by the lapse of time. The original guardian confessed a judgment of debt to his ward, and immediately thereafter the court appointed new guardians of the same ward. *Id.* at 61, 63. The court concluded that the ward, "having guardians competent to protect her interests, and to prosecute in her behalf for any error in the settlement of the accounts of her former guardian, is not exempt by her infancy from the bar of the statute of limitations." *Id.* at 68. In other words, the court held that the statute of limitations runs against an infant from the time he has a guardian, because the infant then has someone to look after his rights and to sue for him if necessary. *Id.*

Therefore, the district court did not err in finding Levin's ADA and Rehabilitation Act claims were untimely.

**B. The district court correctly granted judgment to SCDHHS as a matter of law on the merits as to Levin's ADA and Rehabilitation Act claims.**

Levin argues the district court erred in finding he had failed to meet his burden in proving a serious or significant risk of institutionalization existed as a result of the reduction in services that occurred in 2010. [Doc 42, p. 63].

Levin was transitioned to his home setting in 2006 and has remained there ever since. [J.A., p. 4313, lines 9-10; p. 3589, lines 4-6]. After returning home in

2006 until the 2010 HASCI waiver reductions went into effect, Levin received eight hours per day of personal attendant care for a total of 56 hours. After the 2010 HASCI waiver reductions went into effect, Levin received 49 hours per week of personal attendant care under the waiver program. [J.A., p. 4402, line 12-p. 4403, line 1].

Levin argues in part that parental support should not be considered in determining a participant's risk of institutionalization. [Doc 42, pp. 66]. However, unlike the State Plan, the waivers are specifically designed to provide services that "compliment and/or supplement the services that are available to participants through the Medicaid State plan and other federal, state and local public programs as well as the supports *that families* and communities provide." (emphasis added) [J.A., p. 2252]. Moreover, there is no indication that the district court made any findings of fact or rulings on this argument in its orders.

Levin relied heavily on the testimony of his neurologist, Dr. Shissias. While Dr. Shissias was not Levin's primary care physician, he did see Levin approximately every 90 days for the past ten (10) years. [J.A., 4243, line 6-p. 4244, line 1]. However, at trial, Dr. Shissias did not know the number of hours of attendant care that Levin received per week and he did not know what other services Levin received from either SCDHHS or SCDDSN. In fact, Dr. Shissias presumed that Levin was receiving the 60 hours of nursing care that he ordered and he incorrectly believed

that the purpose of the trial was because SCDHHS was attempting to reduce the 60 hours of nursing services.  Dr. Shissias was not aware of when he wrote the order for nursing services and he was not aware that the nursing services never began. [J.A., p. 4244, line 6-p. 4245, line 2; p. 4246, lines 19-23].

According to Dr. Shissias, he was under the impression that Levin has received the same level of care since 2006 or 2007 and that only recently SCDHHS was attempting to reduce his order of 60 hours of nursing per week, which was the subject of this lawsuit.  [J.A., p. 4246, lines 14-23; p. 4257, lines 11-19].  While Dr. Shissias stated that if Levin's current services were reduced, he believed Levin's risk of institutionalization increased.  However, Dr. Shissias specifically testified that if Levin continued to receive the services that he had been receiving for the past several years, then Levin would be at no greater or increased risk of institutionalization other than the ordinary risk associated with Levin's type of injury.  [J.A., p. 4246, line 24-p. 4247, line 13].

There is no evidence in the record that Levin has, at any point in time since returning home in 2006, gone without an available caregiver for any reason.  [J.A., p. 3552, lines 9-12].  The record clearly establishes that Levin has never faced the issue of possibly being institutionalized since returning home in 2006.  [J.A., p. 3592, line 20-p. 3593, line 4; p. 4406, line 4-p. 4407, line 2].  By all accounts Mr. Levin has received exceptional care from his physicians, caretakers, and family and

has remained in good health given the debilitating nature of his injury.  [J.A., p. 4243, lines 11-15; p. 4258, lines 15-23; p. 4350, line 23-p. 4351, line 3; p. 4351, lines 10-14; p. 4401, lines 2-19].

Based upon the testimony of Levin's hybrid expert witness, Dr. Shissias, Levin did not face any greater, increased, significant or serious risk of institutionalization if he continued to receive the service hours that he has received for the past few years.  It is further uncontested that Levin has received 49 hours of weekly attendant care since January 2010.  Therefore, there was ample evidence for the district court to base its finding that Levin failed to meet his burden in proving a serious or significant risk of institutionalization existed as a result of the reduction in services that occurred in 2010.  Accordingly, the district court's findings of fact should be affirmed.  *Roanoke Cement Co.*, 413 F.3d at 433 (stating factual findings may be reversed only if clearly erroneous).

## V.      THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT TO SCDHHS ON LEVIN'S 42 U.S.C. § 1983 CLAIMS

### A.      Exhaustion of administrative remedies.

Appellants Issue 4 claims SCDHHS has "violated waiver participant's due process rights by requiring them to exhaust administrative remedies before seeking judicial review under § 1983[.]" [Doc 42, p. 69].  There is no argument, citation to the facts in the record, or citation to any legal authority in support of this statement.

Therefore, the issue is not appropriate for appellate review. *North American Precast, Inc.*, 413 Fed.Appx. 574 (stating an appellant must include his "'contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Id.*, quoting Fed. R. App. P. 28(a)(8)(A)).

On the merits, presumably, Levin is referring to the district court's November 10, 2014 Order which granted summary judgment in favor of SCDHHS on Levin's claim for the "violation of statutory and constitutional due process." [J.A., pp. 2563-2565].

While the district court found that Levin never requested state agency review of the 2010 reductions in his waiver services and correctly ruled Levin could not claim a due process violation just because he deems the agency review process "futile," there was no discussion, finding or holding that Levin must exhaust his administrative remedies. [*Id.*]. In fact, the district court simply found that Levin failed to allege that he was not provided notice of the reduction or termination of any service or denied the right to appeal the reduction or termination of any service. [J.A., p. 2564]. Therefore, the district court's decision granting summary judgment to SCDHHS on the due process claim should be affirmed.

**B.    Notice.**

Levin alleges the district court erred in granting SCDHHS summary judgment on the alleged violation of 42 U.S.C. 1396a(a)(3) and 42 C.F.R. 431.210 concerning notice requirements.

No evidence was presented that Levin *did not* receive a notice when his 2010 services were reduced or was denied an opportunity to seek reconsideration or appeal the decision to the fair hearing system. [J.A., p. 2564]. Accordingly, Levin's arguments are without support and the district court's findings of fact and conclusions of law should be affirmed.

### C. Reasonable promptness.

Participants allege that they have been provided with orders for nursing services in 2014 but those services were not provided within 90 days and notices were not sent. [Doc 42, p. 72]. Levin also makes a single statement that the district court erred in ruling Levin did not request an adult communication device. [Doc 42, p. 72].

First, Stogsdill's claim was dismissed on other grounds and the district court did not address any claims related to reasonable promptness as to Stogsdill. [J.A., p. 2564]. Second, the district court struck all evidence of Levin's request for nursing services on ripeness because no agency decision had been made. [J.A., pp. 2903-2906]. Therefore, the merits of these issues were not addressed by the district court and are not properly before this Court.

As to the issue of Levin's alleged request for a speech device, the evidence in the record is that a doctor has never issued an order for a speech device, no request for a speech device has been made to SCDHHS and, therefore, the district court did not err in its ruling.  [J.A, p. 3590, line 4-p. 3592, line 19].

## CONCLUSION

For the reasons set forth above, SCDHHS respectfully requests an opinion that there was no evidence to support a finding that it violated the feasible alternative provision of the Medicaid Act, that the district court erred in denying the Motion for Judgment on the Pleadings, that the district court correctly granted judgment in favor of SCDHHS as to Levin's claims, and correctly dismissed the claims of Stogsdill.

RILEY POPE & LANEY, LLC

s/Damon C. Wlodarczyk
Damon C. Wlodarczyk, Fed. I.D. No. 9487
Post Office Box 11412
Columbia, South Carolina 29211
Telephone:  (803) 799-9993
damonw@rplfirm.com

Attorneys for Anthony Keck and the South Carolina Department of Health and Human Services

Columbia, South Carolina
August 2, 2018

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____    Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]    this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

# CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
Signature

_____
Date